# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | Chapter 11 Case |
| | ) | |
| BRAMPTON PLANTATION, LLC | ) | Number <u>10-40963</u> |
| | ) | |
| *Debtor* | ) | |
| | ) | |
| | ) | |
| | ) | |
| GERMAN AMERICAN CAPITAL | ) | **FILED** |
| COMPANY, AS ASSIGNEE OF | ) | Samuel L. Kay, Clerk |
| BRANCH BANKING AND TRUST | ) | United States Bankruptcy Court |
| COMPANY | ) | Savannah, Georgia |
| | ) | By camerson at 3:46 pm, Dec 06, 2011 |
| *Movant* | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRAMPTON PLANTATION, LLC | ) | |
| | ) | |
| *Respondent* | ) | |

## <u>MEMORANDUM AND ORDER</u>
### <u>ON MOTION FOR RELIEF FROM STAY AND MOTION TO DISMISS</u>

Debtor's Chapter 11 case was filed May 3, 2010. Debtor is the owner and developer of a high-end residential community on Hutchinson Island, directly across the Savannah River from Savannah's Historic District. The development is situated adjacent to a resort quality golf course, river and marsh frontages and views, and convenient to Savannah shopping and commercial centers.

A threshold issue in this case centered around the current value of the development which is pledged to German American Capital Company ("GAC" or "GACC") by assignment from Branch Banking and Trust Company ("BB&T") to serve a loan in the original principal amount of $21,000,000.00, which with interest and tax accruals has now grown to approximately $29,000,000.00.[1] This Court conducted a valuation hearing and ruled that the current value of the Property is $4,233,000.00. Dckt. No. 162. Debtor has sought leave to appeal that Valuation Order to the United States District Court, arguing that the Property's value is $32,190,000.00. Dckt. Nos. 169, 172.

During the pendency of this case, BB&T (now GAC) filed a Motion for Relief from Stay and a Motion to Dismiss which were set for trial on November 16, 2011. Dckt. Nos. 17, 18, 179. Debtor and GAC entered into a stipulation of facts (Dckt. No. 186) which is incorporated verbatim herein:

> 1. The Debtor is a Delaware limited liability company formed for the purpose of owning and developing for residential use approximately 91 acres of land to be known as The Reserve at Savannah Harbor on Hutchinson Island, Chatham County, Savannah, Georgia ("the Property").
>
> 2. The Property is the subject of an approved master plan providing for 815 units, currently has 200+ lots platted, as well as infrastructure and improvements in place

---

[1] Debtor owes (1) the stipulated principal amount of $23,966,217.00 as of the petition date, plus interest and other charges, (2) the stipulated $1,431,500.25 of ad valorem taxes paid by GAC, (3) interest at the default interest rate of 7.75%, which amounts to approximately $5,100.00 per day or $3,369,000.00 total since the maturity date of the loan, and (4) costs and attorney's fees, which have yet to be established.

consisting of: roads, curbs, gutters, architectural street lamps, two lift stations, a gated entrance with monument sign, a greeter station, a park which is fully completed known as Mary Musgrove Park and a clubhouse (dried-in and 75% complete).

3.    In connection with the Debtor's acquisition and development of the Property, Debtor executed and delivered to Lender:

(a)    a Revolving Promissory Note dated July 11, 2005, in the original principal amount of up to $21,000,000, made by the Debtor to the order of BB&T (as at any time amended, the "Revolving Note"), as amended By an Allonge and First Modification to Revolving Promissory Note dated September 26, 2007 (which, among other things, increased the maximum principal amount thereunder to $24,500,00), an Allonge and Second Modification to Revolving Promissory Note dated March 11, 2009, and the Allonge and Third Modification to Revolving Promissory Note dated May 20, 2009; true and correct copies of which are attached to the Motion for Relief filed by BB&T in this case.

(b)    a Loan Agreement dated July 11, 2005 (as at any time amended, the "Loan Agreement"), between the Debtor and BB&T, as amended by a First Modification to Loan Agreement and Other Loan Documents dated September 26, 2007, an Omnibus Amendment of Loan Documents dated September 26, 2007, a Second Modification to Loan Agreement and Other Loan Documents dated March 11, 2009, and a Third Modification to Loan Agreement and Other Loan Documents dated May 20, 2009; true and correct copies of which are attached to the Motion for Relief filed by BB&T in this case.

(c)    a Deed to Secure Debt and Security Agreement dated July 11, 2005 (as at any time amended, the

"Security Deed"), made by the Debtor in favor of BB&T and recorded at Deed Book 290-V, Page 49, Office of the Clerk, Superior Court of Chatham County, Georgia, as amended by a Modification of Deed to Secure Debt and Security Agreement, Assignment of Leases, Rents and Profits and Other Loan Documents dated December 5, 2005, and recorded at Deed Book 298-O, Page 447, aforesaid records, a Second Modification of Deed to Secure Debt and Security Agreement, Assignment of Rents and Profits and Other Loan Documents dated September 26, 2007, and recorded in Deed Book 332-H, Page 475, aforesaid records, and a Third Modification of Deed to Secure Debt and Security Agreement, Assignment of Leases, Rents and Profits and Other Loan Documents dated March 11, 2009; and recorded at Deed Book 349-K, Page 324, aforesaid records; true and correct copies of which are attached to the Motion for Relief filed by BB&T in this case.

(d)     a UCC-1 financing statement filed with the Delaware Department of State on July 19, 2005, at File No. 5228932-1, naming the Debtor as debtor and BB&T as secured party, a true and correct copy of which is attached to the Motion for Relief filed by BB&T in this case.

4.   GACC is the holder of the above-described loan documents by virtue of assignment from BB&T.

5.   The total of Debtor's investment in the Property, including acquisition, development and improvement costs is in excess of $40,000,000.00.

6.   The Revolving Note matured by its terms on January 31, 2010.

7.   By letter dated April 2, 2010, Lender advised Debtor that Lender intended to sell the property as described in the Security Deed (the "Property") at foreclosure on May 4, 2010.

8. Between April 2, 2010, and May 3, 2010, the Debtor and BB&T continued to discuss a resolution of the indebtedness, but were unsuccessful.

9. At the time of the Debtor's bankruptcy filing on May 3, 2010, the approximate principal indebtedness owed by Debtor to Lender under the Revolving Note was $23,966,217 plus interest and other charges.

10. The non-default rate of interest on the Revolving Note is the Wall Street Journal prime rate, plus one-half of one percent (.50%). The maturity, or default rate of interest under the Revolving Note is four percent (4%) in excess of the applicable rate of interest at the time of default. The contract rate of interest on the date of maturity was 3.75%, so that the default rate of interest thereafter is 7.75%.

11. As of October 14, 2011, the total of unpaid county and city ad valorem taxes on the property was $1,423,603.24, which includes interest and penalties of $216,161.00.

12. The Debtor owns no assets other than the Property.

13. Debtor has had no income since March of 2008.

14. Debtor has borrowed a total of $195,000.00 from its officer from the date of its bankruptcy filing through May 31, 2011.

15. On September 14, 2011, the City of Savannah Park and Tree sent a letter to the Debtor, and to Branch Bank & Trust (GACC's predecessor in interest) advising of deficiencies related to the Debtor's failure to plant trees required by the City of Savannah Tree Protection Ordinance. A copy of that letter is attached here to as Exhibit A.

16. The Debtor filed this bankruptcy case on the date prior to the scheduled non-judicial foreclosure sale of the Property.

17. Debtor has had only one employee during the

pendency of the bankruptcy. This employee, Dana Thompkins, has been paid a total of approximately $25,573 since the date of filing.

18. Debtor has not sold any lot or parcel of the Property since October 29, 2007.

19. Debtor has made no payments to Lender during the pendency of this bankruptcy case, but the Debtor contends none has been required by either operation of bankruptcy law or order of the Bankruptcy Court.

20. Debtor has made no improvements to the Property during the pendency of this bankruptcy case.

21. The Debtor has attempted, without success, to refinance the indebtedness now owed to GACC.

22. An Order was entered in the Bankruptcy Court on July 26, 2010, in which BB&T and the Debtor agreed to Brampton's designation as a single asset real estate debtor.

23. Brampton filed a Plan of Reorganization on August 20, 2010 (the "Plan") within 30 days of said determination as required under 11 U.S.C. § 362(d)(3)(A) (Dkt. 82 and Dkt. 83). The Plan asserted a value of the Property of $32,180,000[2] based upon an appraisal performed by Clayton Weibel, MAI, appraiser for Brampton, dated July 5, 2010, (the "Weibel Appraisal") and generally calls for the Property to be divided into parcels and granted to creditors in a value proportionate to their respective claims.

24. An evidentiary hearing on the valuation of the Property was conducted over the course of one full day on July 22, 2011, wherein the Bankruptcy Court received appraisals and heard the testimony of Joel Crisler, MAI, appraiser for BB&T/GACC (the "Crisler Appraisal") and

---

[2]While the parties stipulated to this number, Debtor's proposed Plan actually asserted a value of $32,190,000.00 (Dckt. No. 83), and the Weibel Appraisal likewise valued the Property at $32,190,000.00 (Dckt. No. 151).

Mr. Weibel. The Crisler Appraisal values the Property at $4,233,000 and the Weibel Appraisal, as stated above, valued the Property at $32,180,000.

25. On September 12, 2011, the Bankruptcy Court issued its Memorandum and Order on Valuation and Ruled in favor of GACC, accepting the Crisler Appraisal over the Weibel Appraisal.

26. The Debtor has not filed an Amended Plan utilizing the Court's valuation of the Property.

27. On September 26, 2011, the Debtor filed a Motion to Permit Interlocutory Appeal and a Notice of Appeal in the Bankruptcy Court with respect to the September 12, 2011, Memorandum and Order on Valuation.

28. The Bankruptcy Court has transmitted the Motion to Permit Interlocutory Appeal to the United States District Court for Southern District of Georgia.

29. The Motion to Permit Interlocutory Appeal has not been ruled upon by the United States District Court for the Southern District of Georgia.

At trial the parties stipulated these additional facts:

1. GACC has paid all accrued ad valorem taxes through 2011 in the amount of $1,431,500.25.

2. Dean F. Morehouse, principal of the Debtor entity, is a guarantor of the debt, and has contributed $13,158,466.44 in loans or equity to the Debtor.

Debtor filed motions in this Court to stay all proceedings pending its pursuit of an interlocutory appeal of this Court's valuation order. Dckt. Nos. 184, 185. Because the

hearing for the Motion for Relief from Stay and the Motion to Dismiss was looming, I determined it would be in the interest of judicial economy to conduct the hearing while considering the question of stay pending appeal. By Order dated November 22, 2011, (Dckt. No. 190) I have denied the stay pending appeal and now rule on the Motion for Relief from Stay.

### CONCLUSIONS OF LAW

Based on the stipulations of record and my previous ruling on value, I conclude that the Motion for Relief from Stay should be granted. Motions for Relief from the Automatic Stay are governed by 11 U.S.C. § 362(d), and the Court finds that GAC is entitled to relief under § 362(d)(3) and § 362(d)(2).[3]

Section 362(d)(3) is applicable in this case because of Debtor's status as a single asset real estate debtor. See Dckt. No. 64.

11 U.S.C. § 362(d)(3) provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from stay provided under subsection (a) of this section such as by terminating, annulling, modifying, or conditioning such stay—

---

[3] GAC also argues that § 362(d)(1) entitles it to relief. Because the Court finds that GAC is entitled to relief under § 362(d)(2) and § 362(d)(3), it will not discuss § 362(d)(1).

AO 72A
(Rev. 8/82)

(3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—

(A)    the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

(B)    the debtor has commenced monthly payments that–

        (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate;

Accordingly, Debtor must show that it is making current payments at least equal to the accruing non-default rate, or it must show that it has filed a plan which has a reasonable possibility of being confirmed within a reasonable time. There is no evidence that Debtor is making any payments that would satisfy § 362(d)(3)(B), and so the only question remaining is whether Debtor has filed a plan within the statutory time period that has a reasonable possibility of being confirmed within a reasonable time.

Debtor has not filed such a plan. Debtor's current Plan (Dckt. No. 83) is unconfirmable as it advances a property value that this Court has rejected. Even if Debtor could be granted an extension to amend its Plan to conform to this Court's accepted value, Debtor does not seek to do so. Rather, its position is to rely upon a hoped-for reversal of this

Court's Valuation Order to establish the value Debtor contends is correct—$32,190,000.00. Yet, even accepting the possibility that such a value might be adopted, however remote that possibility, Debtor still could not meet the requirements of § 362(d)(2) and § 362(d)(3)(A), each of which requires that reorganization or confirmation must occur within a reasonable time.

Section 362(d)(2) requires Debtor to show that the Property is necessary to an effective reorganization. The test for showing necessity under § 362(d)(2)(B) is articulated in <u>United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.</u>, which interprets the requirement that the property be necessary to an effective reorganization as follows:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988). In prior decisions I have further held that "necessary" means "logically required." *In re Del-A-Rae, Inc.*, 447 B.R. 915, 919 (Bankr. S.D. Ga. 2011); *In re Simmons*, 446 B.R. 646, 649 (Bankr. S.D. Ga. 2010); *In re HSD Partners, LLC*, 451 B.R. 636, 638

AO 72A
(Rev. 8/82)

(Bankr. S.D. Ga. 2011). Consequently, for property to be "necessary to an effective reorganization," it must be logically required for a reorganization which has a reasonable possibility of succeeding within a reasonable time.

GAC's Motion for Relief from Stay based on § 362(d)(2) requires GAC to carry the burden of showing that there is no equity in the property. 11 U.S.C. § 362(g)(1); 11 U.S.C. § 362(d)(2)(A). Debtor currently owes $29,000,000.00 or more to GAC, and with the current value at $4,233,000.00 (Dckt. No. 162), there clearly is no equity in the property. Therefore, as the case now stands, GAC has met its burden. The party opposing the relief from stay has the burden of proof on all issues other than Debtor's equity in the property. 11 U.S.C. § 362(g)(2).

I conclude, after an examination of the record and the evidence produced at trial, that Debtor has failed to carry its burden to show that it can either reorganize or obtain confirmation within a "reasonable time." Without in any way intruding into the jurisdictional turf of the appellate process, I cannot conclude that it is reasonably possible that Debtor can (1) obtain a final ruling setting a value of over $29,000,000.00, and (2) do so within a reasonable time. The lower value I adopted was supported by the appraisal and the testimony of a qualified MAI. While Debtor's proposed higher value was supported by expert testimony as well, the fact remains that the Court's decision was a fact-based holding which is reviewed under a clearly erroneous standard. That is a burden Debtor is unlikely to carry. Moreover, even if Debtor is successful and a value of $32,190,000.00 is adopted, appellate review by

&AO 72A
(Rev. 8/82)

the United States District Court, possibly the Eleventh Circuit, and then potentially a hearing in this Court on remand could foreseeably consume twelve to twenty-four months. That time frame is not reasonable in light of the minimal equity cushion that would exist, even under this remote scenario.

Assuming a value of $32,190,000.00 is established in the future, the equity cushion today is only in the ten percent range. Such a slim margin is insufficient to protect GAC during the extended appellate review process. By the time Debtor could foreseeably obtain a ruling adopting a value of $32,190,000.00, its debt to GAC will likely have increased above that number. GAC has already been forced to advance $1,431,500.25 to bring the taxes current. Debtor has not sold a parcel of property in its development in over four years, has no income and thus no means of stemming the accrual of future interest, taxes, or attorney's fees. Furthermore, as reflected in Debtor's Monthly Operating Reports, Debtor has borrowed over $200,000.00 since the filing date from an "officer," presumably to cover salaries, utilities, insurance, legal fees, accounting fees, and other operating expenses. Therefore, even under the highly optimistic belief that, through the appellate process, Debtor can establish a value of $32,190,000.00, Debtor has not carried its burden of showing that it could do so before this still-speculative equity cushion would have long since vanished.

## O R D E R

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Motion for Relief from Stay is GRANTED. The Motion to Dismiss is denied on interim

basis and will be rescheduled only on request of a party in interest.

Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This _6__ day of December, 2011.